IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:17-CV-00020-BR

JOSEPH LEE CARAWAY,                )
                                   )
                Plaintiff,         )
                                   )
        v.                         )                ORDER
                                   )
CITY OF ELIZABETH CITY, et. al.,   )
                                   )
                                   )
                Defendants.        )
                                   )

This matter is before the court on Joseph Lee Caraway's ("plaintiff") and defendant City of

Elizabeth City ("the City") and the individual defendants' (collectively "defendants") cross-

motions for summary judgment. (DE ## 35, 39.) The parties filed responses in opposition and

replies. (DE ## 43, 48, 50, 51.) Also before the court is plaintiff's motion for a preliminary

injunction. (DE # 23.) Defendants filed a response in opposition. (DE # 25.)

## I.    BACKGROUND

This action arises out of plaintiff's arrest at the City's annual Potato Festival ("Festival"). On

20 May 2016, the City hosted the Festival. (See Defs.' Statement of Material Fact (DE # 40) at

1; Pl.'s Statement of Material Fact (DE # 37) at 2.) The Festival is a family-oriented street fair

with live entertainment, food, and displays. (See Defs.' Statement of Material Fact (DE # 40) at

1.) City streets are blocked off for the Festival and stages are set up for music, performances,

and announcements. (See Defs.' Statement of Material Fact (DE # 40) at 1; Pl.'s Resp. (DE #

44) at 1.) The Festival is a public, non-ticketed event. (See Pl.'s Statement of Material Fact (DE

# 37) at 2.) On 20 May 2016, plaintiff attended the Festival. (See Defs.' Statement of Material

Fact (DE # 40) at 2; Pl.'s Statement of Material Fact (DE # 37) at 2.) Plaintiff is "an individual acting to spread awareness of his views regarding religious, political, and social topics." (Pl.'s Statement of Material Fact (DE # 37) at 1; see Defs.' Resp. (DE # 46) at 1.) "To share his faith, he distributes free literature, carries portable signs, records public events for commentary and distribution, and engages in one-on-one conversations about Jesus Christ and the Christian faith." (Pl.'s Statement of Material Fact (DE # 37) at 2; see Defs.' Resp. (DE # 46) at 2.) While at the Festival, plaintiff used an amplification box to amplify his voice. (See Defs.' Statement of Material Fact (DE # 40) at 2; Pl.'s Statement of Material Fact (DE # 37) at 3.) He also recorded audio and video footage. (See Defs.' Statement of Material Fact (DE # 40) at 2; Pl.'s Resp. (DE # 44) at 1.)

During the Festival, defendant City police officer Cathy Hewitt ("Hewitt") observed plaintiff on the side of the street on the sidewalk, at the corner of Poindexter and Main Streets, with an amplification box. (See Defs.' Statement of Material Fact (DE # 40) at 3; Pl.'s Resp. (DE # 44) at 1.) Hewitt approached plaintiff and asked him to turn off his amplification box. (See Defs.' Statement of Material Fact (DE # 40) at 3-4; Pl.'s Statement of Material Fact (DE # 37) at 3.) However, plaintiff continued to amplify his voice. (See Defs.' Statement of Material Fact (DE # 40) at 3-4; Pl.'s Statement of Material Fact (DE # 37) at 3.) As plaintiff continued, Hewitt informed her commanding officer, defendant Lieutenant Jamie LaCombe ("LaCombe"), of the situation. (See Defs.' Statement of Material Fact (DE # 40) at 5; Pl.'s Resp. (DE # 44) at 3.) A second officer, City police officer Dowdy ("Dowdy"), also approached plaintiff and asked him to turn off his amplification box. (See Defs.' Statement of Material Fact (DE # 40) at 1; Pl.'s Statement of Material Fact (DE # 37) at 3.) By this point, it is disputed whether plaintiff continued to preach with an amplified voice or responded to Dowdy, "Excuse me?" (See Defs.'

Statement of Material Fact (DE # 40) at 5; Pl.'s Resp. (DE # 44) at 4.)  Thereafter, Hewitt

contacted LaCombe to inform him that plaintiff was not listening to her or Dowdy's commands,

and LaCombe instructed her to do "what was necessary."  (See Defs.' Statement of Material Fact

(DE # 40) at 6; Pl.'s Resp. (DE # 44) at 5.)

     Plaintiff was placed in custody by Dowdy and escorted by Dowdy and Hewitt to LaCombe at

the Festival command post.  (See Defs.' Statement of Material Fact (DE # 40) at 6; Pl.'s

Statement of Material Fact (DE # 37) at 4.)  LaCombe told plaintiff he was welcome to be on the

street but could not use amplified sound.  (See Defs.' Statement of Material Fact (DE # 40) at 6;

Pl.'s Resp. (DE # 44) at 5.)  Plaintiff indicated he would not comply.  (See Defs.' Statement of

Material Fact (DE # 40) at 6; Pl.'s Resp. (DE # 44) at 5.)  It is then disputed whether LaCombe

instructed another officer to write plaintiff a citation and Hewitt instructed that officer to issue it

for trespassing, or if after LaCombe instructed the officer to write plaintiff a citation for

trespassing, Hewitt repeated his command to the other officer.  (See Defs.' Statement of Material

Fact (DE # 40) at 6; Pl.'s Resp. (DE # 44) at 5.)  However, no citation was issued.  (See Defs.'

Statement of Material Fact (DE # 40) at 7; Pl.'s Resp. (DE # 44) at 6.)  Instead, plaintiff was

brought to the Magistrate's Office.  (See Defs.' Statement of Material Fact (DE # 40) at 7; Pl.'s

Resp. (DE # 44) at 6.)  Plaintiff was charged with second-degree trespass.  (See Defs.' Statement

of Material Fact (DE # 40) at 6; Pl.'s Statement of Material Fact (DE # 37) at 4.)  That charge

was later dismissed by the prosecutor.  (See Defs.' Statement of Material Fact (DE # 40) at 7;

Pl.'s Statement of Material Fact (DE # 37) at 4.)

     Before the Festival, LaCombe prepared an Operational Plan ("Plan"), which the Chief of

Police, the City Manager, the fire department, parks and recreation, and emergency management

approved.  (See Pl.'s Statement of Material Fact (DE # 37) at 5; Defs.' Resp. (DE # 46) at 5.)

The Plan provided logistical information for City personnel working the Festival.  (See Pl.'s Statement of Material Fact (DE # 37) at 5; Defs.' Resp. (DE # 46) at 5.)  It is disputed whether a handwritten addendum on the Plan instructed police officers to stop any individuals from using sound amplification at the Festival.  (See Pl.'s Mem. Supp. Summ. J. (DE # 36) at 21 ("IC LaCombe explained not allowed amplified speaker"); LaCombe Dep. (DE # 41-3) at 3.)

Plaintiff filed this action alleging eight claims: (1) section E of the City's Waterfront Park Ordinance ("Ordinance") violates the Free Speech Clause on its face; (2) section E of the Ordinance violates the Free Exercise Clause on its face; (3) defendants' actions and omissions violated plaintiff's rights under the Free Speech Clause; (4) defendants' actions and omissions violated plaintiff's rights under the Free Exercise Clause; (5) the City's Special Events Policy ("Policy") violates the Free Speech Clause on its face; (6) the Policy violates the Free Exercise Clause on its face; (7) the Policy, as-applied, violated plaintiff's rights under the Free Speech Clause; and (8) the Policy, as-applied, violated plaintiff's rights under the Free Exercise Clause. Plaintiff moves for summary judgment as to all claims except numbers five and six – his facial challenge to the Policy based on the Free Speech and Free Exercise Clauses.  In response, defendants move for summary judgment on all claims and for qualified immunity for the individual defendants in their personal capacities.[1]  Plaintiff further seeks a preliminary injunction enjoining defendants from enforcing the Ordinance and the Policy against him at future Festivals.

---

[1] Both parties discuss the City's Noise Ordinance in their briefings; however, plaintiff has not amended his complaint to challenge that ordinance.  As such, the court does not address its constitutionality.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the record as a whole reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986).  The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, <u>Anderson</u>, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (emphasis and quotation omitted).  A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists.  <u>Anderson</u>, 477 U.S. at 249.  In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party.  <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted).

## III.    DISCUSSION

### A.    Summary Judgment

As an initial matter, defendants challenge plaintiff's standing to challenge the Ordinance and Policy on the basis that neither was applied to plaintiff, and, therefore, he cannot show injury in fact.  (<u>See</u> Defs.' Mem. Supp. Summ. J. (DE # 42) at 3-4; Defs.' Resp. (DE # 48) at 2.)  In

response, plaintiff contends that Article III standing is relaxed in First Amendment cases and that

both the Ordinance and the Policy were enforced, or were at least capable of enforcement,

against him.  (See Pl.'s Reply (DE # 51) at 1-2; Pl.'s Mem. Opp'n (DE # 43) at 5-6.)

## 1.    Article III Standing

> To have standing, a plaintiff must show (1) an injury in fact, meaning an injury
> that is concrete and particularized and actual or imminent; (2) a causal connection
> between the injury and the conduct complained of, meaning that the injury is
> fairly traceable to the defendant's actions; and (3) a likelihood that the injury will
> be redressed by a favorable decision.

Covenant Media of SC, LLC v. City of N. Charleston, 493 F.3d 421, 428 (4th Cir. 2007)

(internal quotation marks and citation omitted).  "The complainant must allege an injury to [him

or herself] that is distinct and palpable, as opposed to merely abstract."  Beck v. McDonald, 848

F.3d 262, 271 (4th Cir. 2017) (citing Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)), cert.

denied sub nom. Beck v. Shulkin, 137 S. Ct. 2307 (2017).

Under the First Amendment, a party may bring a constitutional challenge to a

government regulation as-applied or on its face.  See Richmond Med. Ctr. for Women v.

Herring, 570 F.3d 165, 172 (4th Cir. 2009) (finding that a "division has resulted between those

cases in which constitutional challenges are mounted only to test a facial reading of the statute . .

. and those cases in which constitutional challenges are mounted[] based on a developed factual

record and the application of a statute to a specific person. . . ").  For standing purposes, the party

challenging a regulation as-applied must show how he or she suffered personal injury by the

application of the regulation.  See Educ. Media Co. at Virginia Tech v. Insley, 731 F.3d 291, 298

(4th Cir. 2013).

However, a party challenging a regulation on its face is subject to "a departure from

traditional rules of standing" with what is known as the overbreadth doctrine.  Giovani

Carandola, Ltd. v. Bason, 303 F.3d 507, 512 (4th Cir. 2002) (citing Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973)).  The overbreadth doctrine permits those whose "conduct . . . is clearly unprotected and could be proscribed by a law drawn with the requisite specificity to nevertheless challenge the constitutionality of a law's applicable scope."  Am. Entertainers, L.L.C. v. City of Rocky Mount, N. Carolina, 888 F.3d 707, 714 (4th Cir. 2018) (citing New York v. Ferber, 458 U.S. 747, 769 (1982)); see Giovani Carandola, Ltd., 303 F.3d at 512 (finding a nude dancing establishment had standing to challenge a state statute restricting such entertainment on overbreadth grounds because it would burden vast amounts of constitutionally protected expression even if the establishment was not engaging in protected expression).  Even so, a plaintiff must still plead injury in fact consistent with the traditional principles of Article III standing.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 226 (1990), holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774 (2004); Covenant Media of SC, LLC, 493 F.3d at 429–30 (citation and internal quotations omitted) ("Although there is broad latitude given facial challenges in the First Amendment context, a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions."); CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1273 (11th Cir. 2006) ("The overbreadth doctrine, which is judicially created, cannot alter the requirements of standing, under Article III, because the Judiciary cannot abrogate the Constitution.").

### a.    The Ordinance

The Ordinance states,

> (A) All that riverfront property located between the Pasquotank River to the east, Water Street to the west, and Riverside Avenue to the south, known as Waterfront Park shall be set apart for the purpose of this section to be used as a public wharf.

(B) Whenever any group, association or organization desires to use public park facilities for a particular purpose, such as picnics, parties or theatrical or entertainment performances, a representative of the group shall first obtain permission from the Parks and Recreation Director at least 45 days before the function shall be held.

(C) No group, association or organization shall use Waterfront Park for the purpose of holding a fish fry, pig roast or other activity that has to do with dispensing food or drink. Dog Corner Park, located at the corner of Southern and Riverside Avenues, has been reserved for this purpose.

(D) Persons who desire to picnic in Waterfront Park may do so; provided, they leave the premises in good order.

(E) The City Council reserves the right to suspend these regulations for the following listed activities:

>    (1) North Carolina Potato Festival; and

>    (2) Any other such other time as the Council may direct.

(F) No one will be permitted to fish or crab within 50 feet of either side of the boat ramp at Waterfront Park.

(Defs.' App'x (DE # 41-5) at 1.)  Plaintiff contends he has standing to challenge section E under the overbreadth doctrine because "standing requirements are relaxed in First Amendment cases." (Pl.'s Reply (DE # 51) at 1-2.)  Additionally, plaintiff contends he "imminently will be subject to the [Ordinance]" because "[h]e has preached at the [] Festival in the past, and plans to do so again in the future."  (Pl.'s Resp. (DE # 43) at 2.)

Plaintiff misunderstands the overbreadth doctrine.  While plaintiff is correct that the overbreadth doctrine does relax standing requirements, the breadth of relaxation plaintiff suggests is too broad.  The overbreadth doctrine departs from the traditional schematic of standing where a plaintiff challenges a regulation and, in addition to the injury he suffered (regardless of whether his speech is legally unprotected, like the nude dancing in Giovani), he claims that the regulation burdens a large amount of unrelated, protected speech, 303 F.3d at 512.  In those cases, the court assesses the injury both to the plaintiff and the third-parties

burdened by the regulation.  A plaintiff may not broadly claim he has standing on the sole basis

that a regulation may violate the overbreadth doctrine; as recognized previously, he must show

how he suffered an injury under the traditional principles of Article III standing as a result of that

regulation.  See Covenant Media of SC, LLC, 493 F.3d at 429–30.  To that end, plaintiff offers

two interpretations of section E's "overbreadth" that could apply to him "imminently" at future

Festivals: (1) section E creates a ban on all individual sound amplification in Waterfront Park

("Park") during the Festival, (see Pl.'s Mem. Opp'n (DE # 43) at 3; Pl.'s Mem. Supp. Summ. J.

(DE # 36) at 4); and (2) section E involves the unbridled decision-making of government

officials to suspend the public nature of the Park during the Festival, (see Pl.'s Mem. Opp'n (DE

# 43) at 3).[2]

Both of these interpretations are unsupported by the language of the Ordinance.  Unlike

most challenges under the overbreadth doctrine, section E, by its terms, does not regulate speech,

mention sound amplification, or attempt to suspend the public nature of the Park to limit speech.

Rather, it provides that during the Festival, the requirement of a group obtaining permission to

use Park facilities may be suspended, and the restrictions – such as no dispensing of food and

drink – may be lifted.[3]  This language is plainly stated without ambiguity.  See Hillman v. I.R.S.,

263 F.3d 338, 342 (4th Cir. 2001) ("The general rule is that unless there is some ambiguity in the

language of a statute, a court's analysis must end with the statute's plain language."); Richmond

---

[2] Plaintiff also contends that "[h]e does not have to actually set foot in Waterfront Park and be arrested in order to challenge the facially unconstitutional Code."  (Pl.'s Resp. (DE # 43) at 4.)  In support, plaintiff cites to CAMP Legal Defense Fund, Inc., 451 F.3d at 1274, on the basis that it is the existence of a standardless licensing statue which gives someone the ability to challenge the licensing statute, not the denial or application for the license itself. (Pl.'s Resp. (DE # 43) at 2.)  While plaintiff is correct that an individual who will be imminently subject to a licensing regulation has standing to challenge it despite whether she or he had already applied for the license, see Freedman v. State of Md., 380 U.S. 51, 56 (1965), section E of the Ordinance is not a licensing scheme.
[3] Whether the restrictions in place when the Festival is not occurring are not challenged.

Med. Ctr. For Women, 570 F.3d at 172 (finding that facial challenges only test a facial reading of the statute).

Even if the language was ambiguous, plaintiff fails to offer any evidence to support either interpretation. In fact, the use of the space itself – allowing expressive activity during the Festival – refutes his interpretation that the public nature of the Park is suspended during the Festival. See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 803 (1985) (when assessing the type of forum, courts examine the nature of the property and the compatibility of the space with expressive activity). It is undisputed that the Festival is open to the public, as a non-ticket event, and includes the area of the Park. Further, the designation of a public forum is not established by the Ordinance itself, but based upon the functionality of the space at issue. See United States v. Grace, 461 U.S. 171, 179 (1983) (finding a sidewalk a public forum regardless of what the statute designated it to be). With or without the Ordinance, the Park is a traditional public forum. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983) (finding that public streets and parks are quintessential public forums).

Additionally, plaintiff's reliance on O'Connell v. Town of Burgaw, N. Carolina, 262 F. Supp. 3d 316 (E.D.N.C. 2017), is unavailing. (See Pl.'s Reply (DE # 51) at 2.) In O'Connell, the plaintiff challenged a North Carolina town ordinance that prohibited an individual's right to exercise free speech during festivals at the Pender County Courthouse Square ("Square") and instead, provided an "alternate public forum be designated during a festival for a person to go to and exercise their right of free speech" down the street. 262 F. Supp. 3d at 319-20. As someone seeking to exercise his freedom of speech at a festival in the Square, the plaintiff was expressly subject to a speech-based regulation and thus had standing to challenge the regulation. Here, however, unlike the ordinance in O'Connell, section E does not regulate speech on its face. As

such, plaintiff cannot show that he will be expressly subject to a speech-based regulation, as the plaintiff demonstrated in O'Connell, in order to show injury. See also CAMP Legal Def. Fund, Inc., 451 F.3d at 1270 ("Under the overbreadth doctrine, [the plaintiff] may mount a facial challenge—as opposed to an as-applied challenge—to provisions of the Festival's Ordinance *that affect its activities*." (emphasis added)).

Because plaintiff lacks standing to facially challenge section E of the Ordinance (and does not challenge the Ordinance as-applied), defendants' motion as to plaintiff's claims based on the Ordinance will be granted.

### b.    The Policy

The Policy, in relevant part, states:

> The City of Elizabeth City recognizes special events as an important part of Elizabeth City's quality of life. . . . A Special Event may include, but is not limited to, the following event types: festivals, carnivals, marches, demonstrations, parades, walks, block/street parties and sport tournaments . . . .
>
> Amplification of music and sound as part of an outdoor special event is regulated in compliance with the City's Noise Ordinance (Article II, Section 50-35—50-44). An "Amplified Noise Permit" is _not_ required to amplify sound for a Special Event; however neither does the Special Event Permit serve as authorization for disregard of the noise ordinance. The noise ordinance does grant reasonable exceptions for noise emanating from activities under city permit, to include noise from fireworks. Any complaints of loud, disturbing, or unnecessary noise may result in the immediate revocation of the Special Event Permit by the Elizabeth City Police Department.

(Defs.' Resp. Opp'n (DE # 25-2) at 20, 23.)

Defendants challenge plaintiff's standing to challenge the Policy both as-applied and on its face. Plaintiff contends that he has standing to challenge the Policy as-applied on the basis that: (1) the Policy creates an exclusive permitting scheme for Festival participants, rendering

him unable to apply for a sound amplification permit; (2) he has lost income in legal fees because of this litigation; (3) the facts demonstrate the Policy was applied to him; and (4) he will suffer injury from future applications of the Policy.  (See Pl.'s Mem. Opp'n (DE # 43) at 4-5.)  In response, defendants contend that plaintiff's argument that the Policy was applied to him is speculative and that the Policy has not been previously applied to limit an individual's ability to apply for a sound amplification permit, nor is it anticipated to apply this way in the future.  (See Defs.' Reply (DE # 50) at 3.)

Plaintiff claims he is injured because he believes the Policy's amplification permit exemption for special events applies to the Festival exclusively, and consequently, individuals who are not affiliated with the Festival cannot obtain a permit for sound amplification.  (See Pl.'s Mem. Opp'n (DE # 43) at 4-5.)  While the text of the Policy does not exclude individuals from applying for a sound amplification permit under the City Noise Ordinance, plaintiff contends that it was the police's application of the Policy in this way that caused him to be removed from the Festival.  Specifically, plaintiff demonstrates that Hewitt informed him that it was a Festival rule (i.e., the Policy) which limited his ability to amplify.  (See Hewitt Dep. (DE # 41-2) at 3; Pl.'s Reply (DE # 51) at 5.)  As such, he demonstrates with sufficient particularity that the Policy, as-applied by defendants, caused him personal injury and thus has standing to challenge the Policy as-applied.

As for plaintiff's challenge to the Policy on its face, he fails to argue with any specificity why he has standing.[4]  (See Pl.'s Resp. Opp'n (DE # 43) at 2-8.)  Looking at the merits of his

_____

[4] While "[a] plaintiff who has established constitutional injury under a provision of a statute as-applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision[,]" CAMP Legal Def. Fund, Inc., 451 F.3d at 1271, plaintiff, here, does not plead that any rights of others not before the court are harmed by the Policy.  Without asserting any specific harm on behalf of

claim, plaintiff contends the Policy is unconstitutional on its face because it only allows for Festival organizers to amplify. Specifically, he contends, "[i]t is unconstitutional [that] the Potato Festival organizers do not need a permit, but everyone else does . . . and [that] no one else is even allowed to get a permit." (See Pl.'s Reply (DE # 51) at 8.) As such, the court assumes his alleged injury is his inability to obtain a sound amplification permit for the 2016 Festival and his potential for arrest at future Festivals.

While a party is not required to apply for a permit to challenge a permitting or licensing scheme, see Freedman, 380 U.S. at 56, he must show how the permit or licensing process harms him, see CAMP Legal Def. Fund, Inc., 451 F.3d at 1275. Common challenges to licensing schemes are: standardless requirements in the application process, see id. (finding that it is the "existence, not the imposition, of standardless requirements" that cause the injury), unbridled decision-making, see City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 755–56 (1988) ("[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license[,]" and untimely decision-making, see Covenant Media of SC, LLC, 493 F.3d at 430 (finding plaintiff had standing to challenge a provision that did not require the City to make a decision on an application within a specific period of time). Courts are particularly concerned about permitting or licensing schemes because of the potential for individual self-censorship "to avoid being denied a license to speak." City of Lakewood, 486 U.S. at 759.

---

others, plaintiff cannot establish standing by arbitrarily saying the Policy is overly broad and then failing to provide a single example demonstrating this theory.

However, plaintiff's challenge is unlike most challenges to a permitting or licensing scheme because he neither applied for a sound amplification permit nor shows why, had he applied for one, the Policy on its face would be involved in the permit application process or responsible for his permit's grant or denial. While the court acknowledges the Policy exempts special event permit holders from the sound amplification permit requirement under the City's Noise Ordinance, the Policy itself is not a licensing scheme. By its terms, the Policy does not regulate an individual's right to speak subject to some type of prior government approval, such as a permit. See Ohio Citizen Action v. City of Mentor-On-The-Lake, 272 F. Supp. 2d 671, 681 (N.D. Ohio 2003) (citing Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee, 274 F.3d 377, 391 (6th Cir. 2001)), ("A prior restraint exists when an individual's right to speak is conditioned upon the prior approval of public officials."); Richmond Med. Ctr. For Women, 570 F.3d at 172 (finding that facial challenges only test a facial reading of the statute). Rather, if plaintiff were to be granted or denied a permit to amplify, the decision would be as a result of the City's Noise Ordinance. Accordingly, plaintiff does not show how the Policy itself harms him for purposes of standing to challenge the Policy on its face.

Defendants' motion will be granted as to plaintiff's standing to challenge to the Policy on its face and denied as to the Policy as-applied.

### 2. First Amendment Challenge to the Policy As-Applied

Both parties move for summary judgment on plaintiff's claims that the Policy as-applied violated his constitutional rights under the Free Speech and Free Exercise Clauses. Plaintiff contends that the speech in which he engaged was constitutionally protected under these Clauses and that the government's ability to restrict constitutionally expressive conduct in a public forum

is limited.  (See Pl.'s Mem. Supp. Summ. J. (DE # 36) at 5-9.)  Plaintiff also contends that the Policy, as-applied, provides too much discretionary enforcement.  (Id.)  Further, plaintiff contends that the officers enforced a "no amplification" rule specific to the Festival.  (Id. at 10-12.)  Lastly, plaintiff contends that the Policy is not a reasonable time, place, or manner restriction.  (Id. at 18.)  Defendants, alternatively, contend they are entitled to summary judgment because the Policy was not applied to plaintiff.  (See Defs.' Mem. Supp. Summ. J. (DE # 42) at 3.)  Defendants contend the City's Noise Ordinance, specifically section 131.08(B) which requires permits for outdoor amplified sound, was capable of application to plaintiff, but that the Policy itself does not regulate either speech or conduct of attendees at the Festival.  (Id. at 6, 9.)

To determine the extent to which speech is protected under the First Amendment, a court must: (1) identify the nature of the forum in which the speech would take place; and (2) assess whether the government's exclusion of the speech from the forum is justified by the requisite standard.  See Cornelius, 473 U.S. at 799-800.  In a public forum, for content-based speech, "speakers can be excluded . . . only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest."  Id. at 800; see Perry Educ. Ass'n, 460 U.S. at 44.  Further, in a public forum, for content-neutral speech, "[t]he state may [] enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication."  Perry Educ. Ass'n, 460 U.S. at 45.  Public streets, sidewalks, and parks are quintessential public forums.  Id.; see e.g., Grace, 461 U.S. at 179 ("Sidewalks, of course, are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property.").

Here, plaintiff presents evidence that Hewitt instructed plaintiff that he could not amplify at the Festival, but that he could amplify outside of the Festival. (See Hewitt Dep. (DE # 41-2) at 3; Pl.'s Reply (DE # 51) at 5.) Had Hewitt enforced the City's Noise Ordinance on its terms, which limits outdoor sound amplification in the City broadly, plaintiff would have been instructed that he could not amplify without a permit regardless of the Festival's borders. Consequently, plaintiff argues Hewitt was enforcing the Policy in a way that created a Festival-specific amplification ban. In response, defendants present evidence, through the deposition of LaCombe, that the Policy was not applied to plaintiff, rather, he was arrested for second degree trespass for failure to obey the City Noise Ordinance. (See Defs.' Mem. Supp. Summ. J. (DE # 42) at 4; LaCombe Dep. (DE # 41-3) at 9; see also Pl.'s Mem. Supp. Summ. J. (DE # 36-1) at 7.) LaCombe maintains that plaintiff's conduct would have been criminal anywhere in the City and that his arrest as a result of his amplification was not unique to the Festival. As presented, the parties disagree over the application of and scope of the Policy, which is necessary to understanding if the Policy was applied to plaintiff, if it is a speech regulation, and if so, what level of scrutiny is appropriate. Given the genuine issues of material fact, both defendants' and plaintiff's motions for summary judgment on this issue will be denied.

### 3. Plaintiff's Claims Against the City

Defendants move for summary judgment on plaintiff's claims that the City's actions and omissions violated plaintiff's rights under the Free Speech Clause and Free Exercise Clause under 18 U.S.C. § 1983 based on the City's failure to train its police officers. "To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips v.

Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). "A municipality cannot be held liable under [section] 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). However, a municipality can be liable under section 1983 "where its policies are the moving force behind the constitutional violation." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). An area where municipal liability may arise is a city's training program for a class of its employees, such as police officers. Id.; see Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003) (citing Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987)), ("The way in which a City chooses to train its police force is necessarily a matter of policy."). "[T]the inadequacy of police training may serve as the basis for [section] 1983 liability . . . where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio, 489 U.S. at 388. "[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." Id.; see Lytle, 326 F.3d at 473 (finding that the alleged inadequate training must relate to the particular tasks the officers perform).

Here, plaintiff contends he "has satisfied the Monell standard by submitting undisputed evidence of the City's policy of prohibiting all amplification at the Potato Festival[,]" namely the Festival's Plan, which demonstrates the City's failure to train its officers. (Pl'.s Resp. (DE # 43) at 17, 19.) Plaintiff contends the Festival's Plan, developed by LaCombe and approved by the Chief of Police, the City Manager, and other City officials, (see Pl.'s Statement of Material Fact (DE # 37) at 5; Defs.' Resp. (DE # 46) at 5), instructed City officers to prohibit all individual amplification at the Festival. Specifically, plaintiff cites to a handwritten addendum on the Festival's Plan which states "IC LaCombe explained not allowed amplified speaker." (See Pl.'s Mem. Supp. Summ. J. (DE # 36) at 21; Pl.'s Mem. Opp'n (DE # 43) at 18.) In contrast,

defendants cite to LaCombe's deposition where he stated that he did not write the handwritten note on the Policy and that his enforcement at the Festival, not allowing amplification, was pursuant to the City's Noise Ordinance. (<u>See</u> LaCombe Dep. (DE # 41-3) at 3.) Further, defendants present evidence of the training the City Police Department gives its officers, which includes First Amendment training and training specific to "street preachers." (<u>See</u> Def.'s Statement of Material Fact (DE # 40) at 9.) In response, plaintiff describes his interactions with Hewitt, where he claims Hewitt banned him from amplifying explicitly from the Festival, and said that he could stand outside the Festival. (<u>See</u> Pl.'s Resp. Opp'n (DE # 43) at 5; Pl.'s Decl. (DE # 24-2) at 4.) Additionally, plaintiff cites to the City's Police Chief Eddie M. Buffaloe, Jr.'s testimony that the arresting officer's actions in this case were consistent with the City's Police Department policies. (<u>See</u> Pl.'s Statement of Material Fact (DE # 37) at 5.) Based on the evidence presented,[5] there is a genuine dispute of material fact as to whether the City enforced a policy banning all amplification at the Festival. As such, defendants' and plaintiff's motions on the issue of the City's liability will be denied.

---

[5] Defendants submit there is a reasonable explanation as to why there was no amplification allowed at the Festival. Defendants argue that because it takes 72 hours to procure a permit and no one had applied for a permit before the Festival, no amplification would be allowed. (<u>See</u> Def.s' Reply (DE # 50) at 5.) This argument, however, is not supported by anything on the record, such as a declaration under penalty of perjury, deposition, or party admission. As such, counsel's unsupported statement is not a fact for the court to consider on a motion for summary judgment. Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."); <u>see</u> <u>Anderson</u>, 477 U.S. at 248–49 (a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial.").

### 4.    Qualified Immunity

Defendants move for summary judgment on all claims against Hewitt and LaCombe in their individual capacities on the basis of qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). "In evaluating whether the right was clearly established, [the court] look[s] not to whether the right allegedly violated was established as a broad general proposition but whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." Pegg v. Klempa, 651 F. App'x 207, 209–10 (4th Cir. 2016) (citing Raub v. Campbell, 785 F.3d 876, 882 (4th Cir. 2015)). "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). However, it is not clearly established law that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions if the official's actions are supported by probable cause. See Reichle, 566 U.S. at 664–65; Hunter v. Bryant, 502 U.S. 224, 228 (1991) ("Under settled law, [police officers] are entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest [plaintiff]. Probable cause existed if at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that [plaintiff] had violated [the law]." (citation and quotation marks omitted)). When an individual refuses an officer's lawful command, it gives the officers probable cause to believe that the individual is obstructing an officer. See Pegg v. Herrnberger,

845 F.3d 112, 119 (4th Cir. 2017) (finding that when probable cause is not an evidentiary issue in the case, a plaintiff's claim for retaliatory arrest is defeated); Klempa, 651 F. App'x at 211.

Defendants contend "[t]he officers were well aware of facts that established probable cause to arrest [p]laintiff for violation of the City [Noise] Ordinance (a misdemeanor, as set forth above) as well as for resist, delay, and obstruct (a misdemeanor, as set forth above and pursuant to N.C. Gen. Stat. § 14-223)." (Defs.' Mem. Supp. Summ. J. (DE # 42) at 10.) This contention, however, is not supported by the record. At the time of plaintiff's arrest, no officer had inquired whether plaintiff had a sound amplification permit. Defendants do not dispute this fact. (See Pl.'s Mem. Supp. Summ. J. (DE # 36) at 22-23.) Defendants also do not provide any admissible evidence as to why no one so inquired or why the officers assumed plaintiff did not have one before arresting him for trespass. (See Defs.' Reply (DE # 50) at 5.) On the facts and circumstances Hewitt and LaCombe knew at the time – that they did not know if plaintiff possessed a permit which would allow him to amplify his voice – a reasonable officer could not have believed there was probable cause to arrest plaintiff. Accordingly, because probable cause or its absence is an evidentiary issue in this case, unlike in Herrnberger, 845 F.3d at 119, his claim for retaliatory arrest is not defeated. Additionally, because defendants' argument that plaintiff resisted, delayed, or otherwise obstructed the officers while they were performing their duties is predicated on a finding of probable cause above, this argument is unavailing.

Defendants also contend Hewitt and LaCombe are entitled to qualified immunity because they did not physically arrest plaintiff themselves and therefore, did not personally violate plaintiff's rights. (See Defs.' Mem. Supp. Summ. J. (DE # 42) at 8-9; Defs.' Reply (DE # 50) at 8.) Plaintiff argues that both officers are liable in their individual capacities because it was

LaCombe who personally supervised plaintiff's arrest and Hewitt who requested plaintiff be issued a citation for trespassing. (See Pl.'s Mem. Opp'n (DE # 43) at 10-11.)

Under Section 1983, a plaintiff must allege that the government official acted "personally in the deprivation of the plaintiff's rights." Bostic v. Rodriguez, 667 F. Supp. 2d 591, 612 (E.D.N.C. 2009) (citing Wright v. Collins, 766 F.2d 841, 850 (4th Cir.1985)); see Miller v. Prince George's Cty., Md., 475 F.3d 621, 630 (4th Cir. 2007) (finding that a police officer who did not actually arrest the individual, but provided misleading statements to the arresting officer to obtain the arrest warrant, liable). Additionally, officers may be liable under the theory of bystander liability. See Randall v. Prince George's Cty., Md., 302 F.3d 188, 204 (4th Cir. 2002) ("[A]n officer may be liable under [Section] 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.").

Here, both LaCombe and Hewitt took personal action leading to plaintiff's arrest. At the Festival, Hewitt requested plaintiff turn off his amplification box, informed LaCombe of plaintiff's refusal to turn off his amplification box, requested Dowdy speak to plaintiff to turn off his amplification box, and was present with Dowdy as plaintiff was escorted from the sidewalk to the Festival's command post. (See Defs.' Statement of Material Fact (DE # 40) at 6; Pl.'s Statement of Material Fact (DE # 37) at 4; Def.'s Mem. Supp. Summ. J. (DE # 42) at 9.) It is also undisputed that LaCombe instructed Hewitt to "do what is necessary" when plaintiff would not turn off his amplification box, (see Defs.' Statement of Material Fact (DE # 40) at 6; Pl.'s Resp. (DE # 44) at 5), was in charge at the command post when Dowdy and Hewitt brought plaintiff over, and instructed City police officers to write plaintiff a citation. (See Defs.' Statement of Material Fact (DE # 40) at 6; Pl.'s Resp. (DE # 44) at 5.) These actions

demonstrate that Hewitt and LaCombe both personally acted to deprive plaintiff of his rights at the Festival when he was arrested. The parties' factual dispute over whether it was LaCombe who instructed another officer to write plaintiff a citation and Hewitt instructed those officers to issue it for trespassing, or if after LaCombe instructed the officer to write plaintiff a citation for trespassing, which Hewitt then repeated to the other officers, is immaterial. (See Defs.' Statement of Material Fact (DE # 40) at 6; Pl.'s Resp. (DE # 44) at 5.) Accordingly, because defendants fail to demonstrate that Hewitt and LaCombe are entitled to qualified immunity, defendants' motion on this issue will be denied.

**B.      Preliminary Injunction**

Plaintiff also moves for a preliminary injunction as to the Ordinance and the Policy, seeking to enjoin defendants "from restricting and limiting his right to peacefully share his message of faith by speaking with people, displaying signs, and distributing literature to those willing to receive it, in any public space in the City, or from citing or arresting him for doing so." (See Pl.'s Mem. Supp. Prelim. Inj. (DE # 24) at 2-4.) Regarding his likelihood of success on the merits, plaintiff raises many of the same concerns raised on his motion for summary judgment. (Id. at 4-15.)

A court may grant a preliminary injunction if the moving party demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In Winter, the Supreme Court rejected the "standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a

clear showing that the plaintiff is entitled to such relief." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (quotation omitted), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam). "When the facts are sharply disputed, a preliminary injunction will not be granted." Price v. City of Fayetteville, N.C., No. 5:13-CV-150-FL, 2013 WL 1751391, *8 (E.D.N.C. Apr. 23, 2013); Prudential Sec., Inc. v. Plunkett, 8 F. Supp. 2d 514, 516 (E.D. Va. 1998).

This matter is largely a dispute over what town regulation resulted in plaintiff's arrest. As discussed at length above, plaintiff does not have standing to challenge the Ordinance, and therefore, has not shown he is likely to succeed on the merits of any claim based on the Ordinance. As for the Policy, which plaintiff does have standing to challenge as-applied, he argues that he is likely to succeed on the merits because the Policy is not a narrowly tailored restriction and does not leave open ample alternative channels of communication. (See Pl.'s Mem. Supp. Prelim. Inj. (DE # 24) at 12-13). As such, plaintiff contends it is not a constitutional time, place, or manner restriction. In response, defendants contend the Policy was not applied to plaintiff, nor could it be applied to him at future Festivals. (See Defs.' Mem. Opp'n (DE # 25) at 25.) Given the sharp factual dispute on the Policy's application and whether it was capable of application to plaintiff at all, plaintiff's motion for preliminary injunction will be denied for failure to show he is likely to succeed on the merits.

### III.    CONCLUSION

For the aforementioned reasons, the court ALLOWS defendants' motion for summary judgment (DE # 39) as to plaintiff's claims that (1) the Ordinance violated the Free Speech Clause on its face; (2) the Ordinance violated the Free Exercise Clause on its face; (3) the Policy on its face violated the Free Speech Clause; and (4) the Policy on its face violated the Free

Exercise Clause; and DENIES it as to plaintiff's claims that (5) the Policy as-applied violated the Free Speech Clause; (6) the Policy as-applied violated the Free Exercise Clause; (7) defendants' actions and omissions violated the Free Speech Clause; and (8) defendants' actions and omissions violated the Free Exercise Clause.  Plaintiff's motion for summary judgment (DE # 35) and motion for a preliminary injunction (DE # 23) are DENIED.

The clerk is DIRECTED to set the final pretrial conference no earlier than 45 days from the filing of this order.

This 30 November 2018.


_____
W. Earl Britt
Senior U.S. District Judge